**FILE COPY**

1 | **ROBERT W. SNYDER (STATE BAR NO.: 75064)**
2 | **Email: rsnyder@rwsnyderlaw.com**
 | **LAURA A. MOYA (STATE BAR NO.: 329990)**
3 | **Email: lmoya@rwsnyderlaw.com**
4 | **LAW OFFICES OF ROBERT W. SNYDER**
 | **6 Morgan, Suite # 114**
5 | **Irvine, California 92618**
6 | **Telephone: (949) 453-8688**
 | **Facsimile:   (949) 453-8188**
7 |

FEE PAID

FILED
CLERK, U.S. DISTRICT COURT
AUG 10 2020
CENTRAL DISTRICT OF CALIFORNIA
BY: _____RS_____ DEPUTY

8 | *Attorneys for Relator,*
9 | URBAN GLOBAL, LLC

LODGED
CLERK, U.S. DISTRICT COURT
8/10/20
CENTRAL DISTRICT OF CALIFORNIA
BY: CS DEPUTY

10 |
11 | **UNITED STATES DISTRICT COURT**
12 | **CENTRAL DISTRICT OF CALIFORNIA**
13 | **WESTERN DIVISION**
14 |

CV20-7217 -DDP-AGRx

15 | UNITED STATES OF AMERICA
 | *ex rel.* URBAN GLOBAL, LLC,

**Case No.**

16 |
 |            Plaintiff-Relator,

**COMPLAINT FOR VIOLATIONS**

17 |
 | v.

**OF THE FEDERAL FALSE CLAIMS**

18 |

**ACT** [31 U.S.C. § 3729, *et seq.*]

19 | STRUXTUR, INC.; EVOLUTIONS
 | FLOORING INC.; NEWSPACE
20 | INC.; MENGYA LIN AKA

**FILED IN CAMERA & UNDER SEAL**

 | MENGYA YA LIN AKA MENGYA
21 | LIN QIAN AKA MINGWEN LIN

**Pursuant to 31 U.S.C. § 3730(b)(2)**

 | AKA JEANETTE LAM; JIN QIAN
22 | AKA JIM QIAN AKA JIN QUIAN;
 | and JOHN DOES Nos.: 1-10,

**NOT TO BE ENTERED ON PACER**

23 |
24 |            Defendants.

**JURY TRIAL DEMANDED**

25 |
26 |
27 | / / /
28 | / / /

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C. § 3729, *et seq.*)

## COMPLAINT FOR VIOLATION OF THE FALSE CLAIMS ACT

On behalf of the United States of America (hereinafter, "Plaintiff" and/or the "Government"), pursuant to the Federal False Claims Act, codified at 31 U.S.C. § 3729 *et seq.* (hereinafter, the "False Claims Act" and/or "FCA"), Urban Global, LLC (hereinafter, "Relator" and/or "Urban Global") brings this Complaint against Struxtur, Inc. ("Struxtur"), Evolutions Flooring Inc. (hereinafter, "Evolutions"), Newspace Inc. (hereinafter, "Newspace"), Mengya Lin (aka Mengya Ya Lin aka Mengya Lin Qian aka Mingwen Lin aka Jeanette Lam) (hereinafter, "Defendant Lin"), Jin Qian (aka Jim Qian aka Jin Quian) (hereinafter, "Defendant Qian"), and John Does Nos.: 1-10 (collectively, "Defendants"), and in support thereof alleges as follows:

## INTRODUCTION

1.     Pursuant to 31 U.S.C. § 3730(b)(1), Relator Urban Global, on behalf of Plaintiff, the United States of America, brings this Complaint seeking to recover damages and civil penalties arising from Defendants Struxtur, Evolutions, Newspace, Defendant Jin, Defendant Qian, and John Does Nos.: 1-10, as provided for under the False Claims Act.  Alternatively, this action seeks to recover damages under the common law theory of unjust enrichment.

2.     On information and belief, during the past three (3) years, at a minimum, Defendants have been knowingly and fraudulently evading and/or causing the evasion of antidumping duties (hereinafter, "ADD") and countervailing duties (hereinafter, "CVD") (collectively, "AD/CVD"), as well as other duties[1] owed to the Government on multilayered wood flooring (hereinafter, "MLWF") manufactured in the People's Republic of China (hereinafter, "China" and/or "PRC").

---

[1] Such as the additional tariffs imposed under Section 301(b) of the Trade Act of 1974, as amended, codified at 19 U.S.C. § 2411 (hereinafter, "Section 301 Tariffs").

1    3.     Defendants have evaded the AD/CVD duties owed on MLWF from

2    China by falsely declaring that their imports of MLWF originated in countries not

3    subject to the Orders, such as Malaysia.  Moreover, Defendants have also falsely

4    declared the true manufacturer of their imported merchandise.  As a result,

5    Defendants have defrauded the Government from rightfully owed AD/CVD which,

6    on information and belief and based on the volume of Defendants' imports,

7    amounts to millions of U.S. dollars in unpaid duties.

8    4.     In addition, due to not reporting the true country of origin for their

9    MLWF imports—*i.e.,* China— Defendants have also defrauded the Government

10   from additional Section 301 Tariffs imposed on certain merchandise originating

11   from China.

12                                 **PARTIES**

13   5.     Plaintiff is the United States of America.  The United States

14   Department of Commerce (hereinafter, "Commerce" and/or "DOC") is the agency

15   responsible for imposing AD/CVD on products it determines are being sold at less

16   than fair market value or are benefitting from unfair government subsidies.

17   Further, the United States Customs and Border Protection (hereinafter, "CBP"

18   and/or "Customs"), an agency within the United States Department of Homeland

19   Security, is responsible for collecting AD/CVD and other customs duties.

20   6.     Relator Urban Global is a limited liability company, duly organized

21   under the laws of the State of California and having its principal place of business

22   in City of Industry, California.  Relator has been engaged in the flooring business

23   since November 6, 2003, as an importer and wholesaler of multilayered wood

24   flooring, among other such products.  Relator is bringing this action pursuant to 31

25   U.S.C. § 3730(b)(1), based upon personal knowledge, information and belief, and

26   relevant documents.  Relator is the only and original source of allegations

27   regarding the FCA violations alleged in this Complaint and has gained firsthand

28   knowledge of the facts alleged herein in its capacity as Defendants' competitor.

7.      Defendant Struxtur is a California close corporation, having its principal executive office at 400 Oyster Point Boulevard, Suite 115,[2] South San Francisco, CA 94080.  Struxtur was incorporated on September 24, 2007, and until 2019, it has been one of the largest U.S. importers of MLWF products.  In 2018, Struxtur was ranked first in terms of shipments of MLWF products into the United States commerce, representing approximately 12.8% of the total amount of MLWF imports—with the next importer following it situated at 9%.  By contrast, in 2018, Evolutions was the sixth U.S. importer of MLWF, in terms of number of shipments, its imports representing merely 2.5% of the total amount of imports of MLWF—five times less than Struxtur's imports.  On information and belief, by 2020, less than two (2) years after being the largest importer of MLWF, Struxtur's imports of MLWF have either stopped entirely, or dropped under 0.8%.

8.      Struxtur transacts substantial business throughout the entire territory of the United States and imported most of the goods at issue herein through this judicial district.

9.      Defendant Evolutions is a California general stock corporation, having its principal executive office at 400 Oyster Point Boulevard, Suite 211, South San Francisco, CA 94080.  Evolutions was incorporated on December 11, 2013, to assume certain contracts of Struxtur's for the sale of PRC-manufactured MLWF and gradually replace Struxtur's place on the market, in an effort to hide assets from creditors, including the United States.  Since 2019, Evolutions has been the largest U.S. importer of MLWF, while Struxtur's imports have gradually dropped under 0.8% by 2020.

---

[2] Although pursuant to Struxtur's May 18, 2020 Statement of No Change (SI-550 NC), its most recent mailing address is 400 Oyster Point Boulevard, **Suite 211**, San Francisco, CA 94080.

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C. §§ 3729, *et. seq.*)

10.     Evolutions transacts substantial business throughout the entire territory of the United States and imported most of the goods at issue herein through this judicial district.

11.     Defendant Newspace is a California close corporation, having its principal executive office at 2725 Jackson Street, San Francisco, CA 94115, and its principal California office at 400 Oyster Point Boulevard, Suite 211, South San Francisco, CA 94080.  Newspace was incorporated on May 22, 2018,[3] to assume certain contracts of Struxtur's for the sale of PRC-manufactured MLWF and gradually replace Struxtur on the market, together with Evolutions, in an effort to hide assets from creditors, including the United States.  In 2020, merely two (2) years after being incorporated, Newspace has already reported considerably more imports than Struxtur—an established importer of MLWF and the largest in 2018 and second largest in 2019.

12.     Newspace transacts substantial business throughout the entire territory of the United States and imported most of the goods at issue herein through this judicial district.

13.     Defendant Lin is Evolutions' Chief Executive Officer (hereinafter, "CEO"), Chief Financial Officer (hereinafter, "CFO"), Secretary, sole Director, and Agent for Service of Process (hereinafter, "ASOP").  In addition, Defendant Lin was Struxtur's incorporator and currently presents herself in the industry as Struxtur's founder, President, and CEO.[4]

14.     Defendant Qian is Struxtur's CEO, CFO, Secretary, sole Director, and ASOP.  Defendant Qian is also Newspace's CEO, CFO, Secretary, sole Director,

---

[3] Newspace's original description of the type of business it was engaged in was "real estate management."  More recently, Newspace has changed this description, now reporting that the type of services it offers are related to the "wholesale of hardwood flooring."

[4] See LinkedIn Profile for Jeanette Lam (available at: https://www.linkedin.com/in/jeanette-lam-635871/, last visited Aug. 7, 2020).

1  and ASOP.  In addition, Defendant Qian was Evolutions' initial ASOP and
2  incorporator.

3     15.   Upon information and belief, Defendants John Does Nos.: 1-10 are
4  entities and individuals whose names and addresses are unknown to Relator at this
5  time.  John Does Nos.: 1-10 include, but are not limited to, the customs brokers,
6  freight forwarders, and other logistics entities that have facilitated and/or facilitate
7  Defendants' efforts to evade and avoid payment of AD/CVD on MLWF products
8  from China.

9                    **JURISDICTION AND VENUE**

10    16.   This Court has subject matter jurisdiction to adjudicate this action
11  under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and 3730(b).  In addition, this
12  Court has supplemental jurisdiction to entertain the common law or equitable
13  claims set forth herein pursuant to 28 U.S.C. § 1367(a).

14    17.   This Court has personal jurisdiction over Defendants pursuant to 31
15  U.S.C. § 3732(a), because Defendants are transacting and have transacted business
16  in this judicial district, and because Defendants have committed acts within this
17  judicial district that violate 31 U.S.C. § 3729.

18    18.   Venue is proper in this judicial district under 31 U.S.C. § 3732(a), and
19  pursuant to 28 U.S.C. § 1391(b)-(d) and 28 U.S.C. § 1395 (a).  Defendants have
20  transacted business in this judicial district, and Defendants Evolutions and
21  Newspace are currently transacting business in this District: most of Defendant's
22  shipments of MLWF have entered into the Los Angeles/Long Beach Seaport (Port
23  Code No.: 2704) and several shipments have likely been delivered to customers in
24  this judicial district.  Moreover, Defendants have committed acts within this
25  judicial district resulting in violations of the False Claims Act.

26  / / /
27  / / /
28  / / /

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C. §§ 3729, *et. seq.*)

1

**FACTUAL ALLEGATIONS**

2

**I.      Customs Duties**

3          19.     All merchandise imported into the United States is required to be

4    "entered," unless specifically excepted.  19 U.S.C. §1484; 19 C.F.R. § 141.4(a).

5    "Entry" means, among other things, that the importer of record or its agent (such as

6    a licensed customs broker acting on behalf of the importer) must file appropriate

7    documents with an officer of CBP, so as to allow the agency to assess appropriate

8    customs duties due on the merchandise being imported into the United States. 19

9    C.F.R. § 141.0a(a).

10         20.     With every entry they make, importers are required to complete and

11   file an entry summary form (*i.e.,* CBP Form 7501) (hereinafter, "Entry

12   Summary").  Each Entry Summary contains the following information, among

13   other things: the date of import, the importer of record, a code signifying the entry

14   type (including whether the entry contains any items subject to AD/CVD), the

15   manufacturer's ID, and the country of origin.  The Entry Summary must also

16   contain the appropriate eight-digit subheading from the Harmonized Tariff

17   Schedule of the United States ("HTSUS Code") that best describes each item of

18   merchandise. 19 C.F.R. § 142.6.

19         21.     Importers are required to maintain and, upon request, submit,

20   documentation supporting the statements made on their Entry Summary

21   submissions.  Such documentation includes commercial invoices, packing lists, a

22   country of origin certificate, and bills of lading. *See, e.g.,* 19 C.F.R. §§ 141.11,

23   141.19(a), 141.81, 141.86(a), 142.3(a), 142.6(a).

24         22.     Pursuant to 19 U.S.C. § 1484, the importer of record is assigned the

25   responsibility of paying the duties associated with each entry it makes, and using

26   reasonable care in making and providing accurate documentation to Customs.  An

27   importer of record is responsible for ensuring that the imported goods comply with

28

1  local laws, filing a completed duty entry and associated documents with Customs,

2  and paying the import duties on those goods.

3      23.   Federal law provides that every importer must file a declaration

4  stating that the values and all other statements set forth on the aforementioned

5  documents and the entry itself are true and correct.  19 U.S.C. § 1485.

6      A.   **The Antidumping and Countervailing Duty Orders on**

7           **Multilayered Wood Flooring from China**

8      24.   Separate from regular customs duties, the United States, through its

9  appropriate agencies, may impose and collect additional duties on imported goods

10  that are being dumped (*i.e.*, sold in the United States at prices below the producer's

11  cost of production or sales price in the country of origin) or for which foreign

12  manufacturers are receiving unfair subsidies.  19 U.S.C. §§ 1671, 1673.

13  Antidumping duties are imposed to counter dumping, while countervailing duties

14  concern unfair subsidies received by foreign manufacturers.

15      25.   When imposing AD/CVD, Commerce issues duty orders that describe

16  the merchandise subject to the additional duties, as well as the country or countries

17  of origin affected.

18      26.   Duties are owed to Customs on importation. 19 C.F.R. § 141.1(a).

19      27.   The Entry Summary requires the importer to identify a two-digit code

20  for the entry type.  When AD/CVD are owed, importers must identify the "03"

21  entry type in the specified Block of the Entry Summary.

22      28.   In 2004, Customs issued numerous guidelines aimed at helping

23  importers ensure that they are exercising reasonable care when declaring the

24  amount of duties they owe.  For instance, one of the questions is, "Have you taken

25  measures or developed reliable procedures to check to see if your goods are subject

26  to a Commerce Department dumping or countervailing duty investigation or

27  determination, and if so, have you complied or developed reliable procedures to

28  ensure compliance with Customs reporting requirements upon entry (*e.g.*, 19

---

**8**

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C.  §§ 3729, *et. seq.*)

1  C.F.R. § 141.61)?"  *Customs, Reasonable Care (A Checklist for Compliance)* 12

2  (2004) (hereinafter, "Reasonable Care Guide").

3       29.    The Reasonable Care Guide also poses questions to help importers

4  ensure they are exercising reasonable care in declaring the country of origin and

5  value of imported goods.  For instance, it asks whether the importer has established

6  reliable procedures, consulted with an expert, and obtained a Customs ruling.  *Id.*

7  at 10-11.

8       30.    MLWF products from China are covered by an ADD order, as well as

9  a CVD order—both in place since December 8, 2011.  *See Multilayered Wood*

10 *Flooring from the People's Republic of China: Amended Final Determination of*

11 *Sales at Less Than Fair Value and Antidumping Duty Order*, 76 FR 76690

12 (December 8, 2011) as amended, *Multilayered Wood Flooring from the People's*

13 *Republic of China: Amended Antidumping and Countervailing Duty Orders*, 77 FR

14 5484 (February 3, 2012) (hereinafter, "ADD Order");  *See also Multilayered Wood*

15 *Flooring from the People's Republic of China: Countervailing Duty Order*, 76 FR

16 76693 (December 8, 2011), as amended, *Multilayered Wood Flooring from the*

17 *People's Republic of China: Amended Antidumping and Countervailing Duty*

18 *Orders*, 77 FR 5484 (February 3, 2012) (hereinafter, "CVD Order") (collectively,

19 the "Orders").

20      31.    On January 3, 2018, after conducting the first sunset review of the

21 ADD Order, Commerce concluded that revocation of the ADD Order would likely

22 lead to a "continuation or recurrence of dumping and material injury to an industry

23 in the United States," and consequently issued and published a notice of

24 continuation of the ADD Order.  *Multilayered Wood Flooring from the People's*

25 *Republic of China: Continuation of Antidumping Duty Orders*, 83 FR 344 (January

26 3, 2018).

27      32.    The merchandise covered within the scope of the Orders (*i.e.*, the

28 subject merchandise) is multilayered wood flooring, also referred to by other

1     terms, such as "engineered wood flooring" or "plywood flooring." *See ADD*

2     *Order* at 76690-91; *see also CVD Order* at 76694. Regardless of the terminology,

3     all products that meet the description provided for in the Orders are intended for

4     inclusion within the definition of subject merchandise. *Id.*

5        33.    The scope of the Orders is set forth in detail in the Federal Register,

6     and it states as follows:

> All multilayered wood flooring is included within the definition of
> subject merchandise, without regard to: dimension (overall
> thickness, thickness of face ply, thickness of back ply, thickness of
> core, and thickness of inner plies; width; and length); wood species
> used for the face, back and inner veneers; core composition; and
> face grade. Multilayered wood flooring included within the
> definition of subject merchandise may be unfinished (i.e., without
> a finally finished surface to protect the face veneer from wear and
> tear) or "prefinished" (i.e., a coating applied to the face veneer,
> including, but not exclusively, oil or oil-modified or water-based
> polyurethanes, ultra-violet light cured polyurethanes, wax, epoxy-
> ester finishes, moisture-cured urethanes and acid-curing
> formaldehyde finishes). The veneers may be also soaked in an
> acrylic-impregnated finish. All multilayered wood flooring is
> included within the definition of subject merchandise regardless of
> whether the face (or back) of the product is smooth, wire brushed,
> distressed by any method or multiple methods, or hand-scraped. In
> addition, all multilayered wood flooring is included within the
> definition of subject merchandise regardless of whether or not it is
> manufactured with any interlocking or connecting mechanism (for
> example, tongue-and-groove construction or locking joints). All
> multilayered wood flooring is included within the definition of the
> subject merchandise regardless of whether the product meets a
> particular industry or similar standard.
>
> The core of multilayered wood flooring may be composed of a
> range of materials, including but not limited to hardwood or
> softwood veneer, particleboard, medium-density fiberboard, high-
> density fiberboard (HDF), stone and/or plastic composite, or strips
> of lumber placed edge-to-edge.

1   Multilayered wood flooring products generally, but not exclusively,
2   may be in the form of a strip, plank, or other geometrical patterns
    (e.g., circular, hexagonal).    All multilayered wood flooring
3   products are included within this definition regardless of the actual
    or nominal dimensions or form of the product.    Specifically
4   excluded from the scope are cork flooring and bamboo flooring,
5   regardless of whether any of the sub-surface layers of either
    flooring are made from wood.  Also excluded is laminate flooring.
6   Laminate flooring consists of a top wear layer sheet not made of

7
8   wood, a decorative paper layer, a core-layer of HDF, and a
    stabilizing bottom layer.
9
10  Imports of the subject merchandise are provided for under the
    following subheadings of the Harmonized Tariff Schedule of the
11  United    States    (HTSUS):    4412.31.0520;    4412.31.0540;
12  4412.31.0560;    4412.31.0620;    4412.31.0640;    4412.31.0660;
    4412.31.2510;    4412.31.2520;    4412.31.2610;    4412.31.2620;
13  4412.31.3175;    4412.31.4040;    4412.31.4050;    4412.31.4060;
14  4412.31.4070;    4412.31.4075;    4412.31.4080;    4412.31.4140;
    4412.31.4160;    4412.31.4175;    4412.31.5125;    4412.31.5135;
15  4412.31.5155;    4412.31.5165;    4412.31.5175;    4412.31.5225;
16  4412.31.6000;    4412.31.9100;    4412.32.0520;    4412.32.0540;
    4412.32.0560;    4412.32.0565;    4412.32.0570;    4412.32.0640;
17  4412.32.0665;    4412.32.2510;    4412.32.2520;    4412.32.2525;
18  4412.32.2530;    4412.32.2610;    4412.32.2625;    4412.32.3125;
    4412.32.3135;    4412.32.3155;    4412.32.3165;    4412.32.3175;
19  4412.32.3185;    4412.32.3225;    4412.32.5600;    4412.32.5700;
20  4412.39.1000;    4412.39.3000;    4412.39.4011;    4412.39.4012;
    4412.39.4019;    4412.39.4031;    4412.39.4032;    4412.39.4039;
21  4412.39.4051;    4412.39.4052;    4412.39.4059;    4412.39.4061;
22  4412.39.4062;    4412.39.4069;    4412.39.5010;    4412.39.5030;
    4412.39.5050;    4412.94.1030;    4412.94.1050;    4412.94.3105;
23  4412.94.3111;    4412.94.3121;    4412.94.3131;    4412.94.3141;
24  4412.94.3160;    4412.94.3171;    4412.94.4100;    4412.94.5100;
    4412.94.6000;    4412.94.7000;    4412.94.8000;    4412.94.9000;
25  4412.94.9500;    4412.99.0600;    4412.99.1020;    4412.99.1030;
26  4412.99.1040;    4412.99.3110;    4412.99.3120;    4412.99.3130;
    4412.99.3140;    4412.99.3150;    4412.99.3160;    4412.99.3170;
27  4412.99.4100;    4412.99.5100;    4412.99.5105;    4412.99.5115;
28  4412.99.5710;    4412.99.6000;    4412.99.7000;    4412.99.8000;

4412.99.9000;   4412.99.9500;   4418.71.2000;   4418.71.9000;
4418.72.2000;   4418.72.9500;   4418.74.2000;   4418.74.9000;
4418.75.4000; 4418.75.7000; 4418.79.0100; and 9801.00.2500.[5]

*ADD Order* at 76690-91; *see also CVD Order* at 76694 and *Multilayered Wood Flooring from the People's Republic of China: Final Clarification of the Scope of the Antidumping and Countervailing Duty Orders*, 82 FR 27799 (June 19, 2017) (hereinafter, "Scope Clarification").

34.    Once AD/CVD orders are issued, Commerce assigns a case number specific to each order, which must be identified by the importers of records on each Entry Summary under which merchandise subject to an AD/CVD order is entered. Case A–570–970 relates to ADD applicable to MLWF from the PRC, while Case C–570–971 refers to CVD applicable to the same product.

**B.    Other Customs Duties – Section 301 Tariffs**

35.    On April 6, 2018, the United States Trade Representative (hereinafter, "USTR") gave notice of its determination that the "acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation covered in the [Section 301] investigation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 14,906 (Apr. 6, 2018).  As a result, USTR has imposed increased tariffs on certain products imported from China—MLWF products being covered under List 3.  *See Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sep. 21, 2018).  *See also Notice of Modification of Section 301*

---

[5] *Id.* (also stating that, while HTSUS subheadings are provided for convenience and customs purposes, the written description of the subject merchandise is dispositive).

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C. §§ 3729, *et. seq.*)

1    *Action: China's Acts, Policies, and Practices Related to Technology Transfer,*

2    *Intellectual Property, and Innovation*, 84 Fed. Reg. 20,459 (May 9, 2019).

3        36.    From September 24, 2018, through May 9, 2019, Chinese-origin

4    imports of MLWF were subject to additional Section 301 Tariffs of 10% *ad*

5    *valorem*; and 25% *ad valorem* as of May 10, 2019 and continuing to the present.

6    **II.    Defendants' Scheme to Evade Customs Duties**

7        37.    To avoid the payment of AD/CVD, defendants conspired with their

8    Chinese manufacturers and exporters, as well as other foreign parties, to

9    fraudulently avoid customs duties owed to the United States, by making false

10   representations on the Entry Summary and its accompanying documentation about

11   the country of origin and the manufacturer of the imported merchandise.

12       38.    Struxtur was incorporated in December 2007, and it has been

13   importing MLWF ever since, becoming the largest U.S. importer of such products.

14   For instance, 2018, Struxtur was ranked first in terms of shipments of MLWF

15   products into the United States commerce, representing approximately 12.8% of

16   the total amount of MLWF imports—with the next importer following it situated at

17   9%.

18       39.    Evolutions was incorporated on December 11, 2013, and it has been

19   importing MLWF ever since.  Based on information and belief, up until 2018, the

20   volume of imports made by Evolutions was minimal.

21       40.    In 2018, Evolutions climbed to be the sixth U.S. importer of MLWF,

22   its imports representing merely 2.5% of the total imports of MLWF—five times

23   less than Struxtur's imports at the time (12.8%).

24       41.    Since 2019, Evolutions has been the largest U.S. importer of MLWF,

25   while Struxtur's imports have been dropping considerably and almost concurrently

26   with Evolutions' sudden growth.  Indeed, by 2020, Struxtur's imports of MLWF

27   have either stopped completely, or dropped under 0.8%.

28

42.     Also concurrent with Struxtur's sudden drop and Evolutions' equally sudden growth, Newspace was incorporated on May 22, 2018.  Together with Evolutions, Newspace has been gradually taking Struxtur's place on the market.  In 2020, only two (2) years after being formed, Newspace has already reported considerably more imports than Struxtur—the largest importer of MLWF products in 2018 and the second largest in 2019.

43.     The AD/CVD imposed on Chinese-made MLWF were intended to, and did, make importing these products considerably more expensive.  However, Defendants decided to evade these duties, and under their common, commingled ownership, engaged in a scheme to make numerous false statements to Customs and its agents, in order to avoid paying such duties.

44.     For example, the Customs Entry Summary requires entries subject to AD/CVD to be identified with the code "03."  Pursuant to their scheme to avoid these duties, Defendants falsely identified, conspired to falsely identify, and caused most of their entries, at a minimum since 2018 to the present day, to be falsely identified with the code "01," rather than the correct code "03."  The code "01" signifies that the merchandise being entered is not subject to AD/CVD—which, in the case of Chinese-origin MLWF, is false.

45.     Moreover, the Customs Entry Summary also requires the accurate country of origin and manufacturer to be reported.  On several occasions, since 2018, at a minimum, and continuing to the present day, Defendant Evolutions has been falsely reporting both the country of origin for the MLWF products it imports, as well as their manufacturer.

46.     For instance, recent U.S. import data for Evolutions shows multiple entries of engineered wood flooring products (*i.e.*, MLWF) allegedly made and originating in Malaysia.

47.     One of Evolutions' declared suppliers/manufacturers of its alleged Malaysian-origin MLWF is Metal Jaya Industries SDN BHD (hereinafter, "Metal

1    Jaya"). The official business address declared by Metal Jaya is 2-1-40, Tingkat

2    Mahsuri 4, Terrace-Plus, Bayan Baru, Pulau Pinang, Malaysia. However, a simple

3    search on the internet reveals that, at Metal Jaya's official business address

4    referenced above, no office under Metal Jaya's name seems to exist, let alone a

5    wood flooring factory and/or a warehouse with the capacity to properly store such

6    voluminous products. In fact, Metal Jaya's declared nature of business is as

7    follows: "exporters and importers, distributors and otherwise deal in all kinds of

8    hardware products, equipments (sic) machineries, tools and all other industrial

9    consumer goods."

10        48.    Another Malaysian supplier/manufacturer of Evolutions' alleged

11   Malaysian-origin MLWF is Setica Industries SDN BHD (hereinafter, "Setica").

12   The official business address declared by Setica is 73-G, Jalan Sembilan, Kawasan

13   Perusahaan Ringan Bakar Arang, 08000 Sungai Petani, Kedah, Malaysia. As is the

14   case with Metal Jaya, a simple search on the internet reveals that, at Setica's

15   official business address referenced above, no office under Setica's name seems to

16   exist, let alone a wood flooring factory and/or a warehouse with the capacity to

17   properly store such voluminous products.

18        49.    Pax Union Resources (M) SDN BHD (hereinafter, "Pax Union") is

19   another Malaysian shipper/manufacturer declared by Evolutions on its Entry

20   Summary submissions with Customs. Once again, this company's declared nature

21   of business is "to carry on business as shipping agents, freight forwarders,

22   forwarding agents of both air and sea." In other words, Pax Union is merely a

23   freight forwarding company and not an exporter and/or producer of MLWF, as

24   falsely declared by Evolutions' on its Entry Summaries submitted with Customs.

25        50.    More recently, another alleged Malaysian supplier of MLWF, as

26   declared by Evolutions on its Entry Summary submissions with Customs, is DP

27   Wholesale SDN BHD (hereinafter, "DP"). Indeed, as was the case with the above-

28   referenced alleged Malaysian shippers/manufacturers of Evolutions' MLWF, DP

does not appear to have any office, wood flooring factory, and/or a warehouse at any of the business addresses associated with it. Moreover, DP describes the nature of its business as "importers and dealer of general merchandise."

51.    The annual U.S. imports of MLWF made from 2015 through 2019, as well as through year to date (hereinafter, "YTD"), show a significant decrease in imports of MLWF from China, while at the same time displaying a similar increase in such imports from Malaysia; culminating with a rise of 336.2% from 2018 to 2019. *See* USITC Dataweb, U.S. Imports for Consumption, Annual Data (2015-2019) and Annual + Year-to-Date Annual Data (2015-2020 YTD).

52.    The volume of Malaysian imports of MLWF has continued to increase in YTD 2020, with a 244.38% increase over YTD 2019 levels and totaling 234,111 square meters in only the first two (2) months of 2020. *See* USITC Dataweb, U.S. Imports for Consumption, Monthly Data (2018-2020 YTD).

53.    In further support of such importing patterns, trade data reflecting annual imports of MLWF from China into Malaysia, made from 2015 through 2019, shows a sudden and substantial increase of imports of Chinese MLWF into Malaysia, particularly in 2017, 2018, and 2019. *See* Trend Economy, Malaysia's Merchandise External Trade Statistics Data (2015-2019). Indeed, the value of Chinese imports of MLWF into Malaysia has increased more than three (3) times throughout the recorded interval. *Id.*

54.    This substantial and abrupt growth of imports from China into Malaysia, together with simultaneous and proportionate increase in the imports from Malaysia into the United States, are an indicator that Chinese-origin MLWF is being transshipped through Malaysia for purposes of avoiding payment of AD/CVD rightfully-owed to the United States under the Orders; given that Malaysia, unlike China, is not subject to any antidumping and/or countervailing duty orders on MLWF.

1    55.    Defendant Evolutions has been and is currently reporting a false
2  country of origin, as well as a false manufacturer, on the Entry Summary and its
3  appropriate accompanying documentation.  As a result of presenting this false
4  information to Customs, Defendant Evolutions has fraudulently reduced the
5  amount of customs duties assessed against it and otherwise rightfully owed to the
6  United States Government.

7  **III.    Defendants' False Statements to Customs**

8    56.    The Federal FCA reflects Congress' intent to "enhance the
9  Government's ability to recover losses as a result of fraud against the
10  Government."  S. Rep. No. 99-345 at 1 (1986), available at 1986 U.S.C.C.A.N.
11  5266.  As relevant here, the FCA establishes civil penalties and treble damages
12  liability to the United States for an individual or entity that:

13

14      (G) knowingly makes, uses, or causes to be made or used, a false
        record or statement material to an obligation to pay or transmit
15      money or property to the Government, or knowingly conceals or
        knowingly and improperly avoids or decreases an obligation to pay
16      or transmit money or property to the Government.
17

18    31 U.S.C. § 3729(a)(1).
19    57.    Under the FCA, the terms "knowing" and "knowingly" include a
20  person's actual knowledge of the false information, deliberate ignorance of the
21  truth or falsity of the information, and reckless disregard of the truth or falsity of
22  the information, but does not require proof of specific intent to defraud.  31 U.S.C.
23  § 3729(b)(1).
24    58.    For all entries of MLWF allegedly originating in Malaysia,
25  Defendants have falsely declared, conspired to declare, or caused to be declared,
26  the code "01" on the Entry Summary.  By entering "01" rather than "03,"
27

28

1  Defendants falsely declared, conspired to declare, or caused to be declared that the
2  entries at issue were not subject to AD/CVD.

3     59.    For all entries of MLWF allegedly originating in Malaysia,
4  Defendants have also falsely reported, conspired to report, or caused to be
5  reported, the incorrect country of origin and manufacturer on the Entry Summary.
6  Specifically, by entering "Malaysia" as country of origin, rather than "China,"
7  Defendants failed to declare applicable AD/CVD.

8     60.    For all entries of MLWF allegedly originating in Malaysia, on the
9  Entry Summary submitted to Customs, the amount of duties Defendants declared,
10  conspired to be declared, or caused to be declared as owed on such imports is false.
11  The actual amount of duties owed should have been much higher, since defendants
12  failed to report the real country of origin and did not include applicable AD/CVD.

13     61.    Misreporting the country of origin for their entries has also resulted in
14  Defendants' failure to report and pay applicable Section 301 Tariffs.

15     62.    By knowingly causing false and fraudulent information and
16  submitting false documentation, Defendants have deprived the United States
17  Government of money, in violation of laws and regulations applicable to such
18  claims.

19     63.    Defendants knowingly, or with deliberate ignorance or reckless
20  disregard, used false entry summaries (and likely their invoices too), with the
21  intention and expectation that the Government would reasonably rely on the false
22  codes, misrepresentations and misstated countries of origin and manufacturers
23  reported on their entry documents.

24     64.    Defendants' false entry summaries were material to the Government's
25  assessment and collection of AD/CVD and other customs duties.

26     65.    Defendants' false entry summaries caused Defendants to pay no
27  AD/CVD, and no Section 301 Tariffs, otherwise rightfully owed to the United
28  States Government.

1      66.    In total, based on information and belief, and on Relator's review of

2   Defendants' recent imports and their volumes, Relator estimates that Defendants

3   have underpaid customs duties by millions of U.S. dollars since 2018 alone, at a

4   minimum.

5                    **COUNT ONE**

6         **Violation of the Federal False Claims Act**

7           **31 U.S.C. §§ 3729(a)(1)(G)**

8      67.    Relator re-alleges and incorporates the allegations contained in

9   Paragraphs 1 through 66 as if fully set forth herein.

10      68.    In violation of 31 U.S.C. § 3729(a)(1)(G), Defendants knowingly

11   made, used, or caused to be made or used, a false record or statement material to an

12   obligation to pay or transmit money or property to the Government, or knowingly

13   concealed or knowingly and improperly avoided or decreased an obligation to pay

14   or transmit money to the Government.

15      69.    By means of these false statements, Defendants decreased the amount

16   of customs duties they paid on imports of multilayered wood flooring, and other

17   customs duties associated with such imported merchandise, in an amount to be

18   determined at trial.

19      70.    On information and belief, the time period during which Evolutions

20   caused the submission of false records and statement to avoid payment of duties

21   owed to the United States extends from as early as January 2018, at a minimum,

22   and continues to the present date.

23      71.    As a direct result of Defendants' actions, the United States suffered

24   damages of millions of U.S. dollars in the deposit of duties rightfully owed to it by

25   the Defendants, due to Defendants' submission of hundreds of false and fraudulent

26   documents.

27   / / /

28   / / /

## COUNT TWO

### Violation of the Federal False Claims Act
### 31 U.S.C. §§ 3729(a)(1)(C)

72.    Relator re-alleges and incorporates the allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

73.    In violation of 31 U.S.C. § 3729(a)(1)(C), Defendants conspired to commit a violation of subparagraph (G) of 31 U.S.C. § 3729(a)(1).

74.    Thus, defendants conspired to knowingly make, use, or cause to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money to the Government.

75.    As a result of this conspiracy, the United States was damaged in an amount to be determined at trial.

### COUNT THREE
### Unjust Enrichment

76.    Relator re-alleges and incorporates the allegations contained in Paragraphs 1 through 66 as if fully set forth herein.

77.    By reason of the false statements submitted to the Government regarding the duties owed on imports of MLWF owed on all imports, Defendants avoided paying duties otherwise owed to the United States, and were thereby unjustly enriched in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays that, with respect to violations of the Federal False Claims Act, Count One, Count Two, and Count Three, judgment be entered against Defendants, jointly and severally, as follows:

1      a.     On Count 1, for judgment against Defendants for statutory penalties

2 and treble damages, as provided for under the False Claims Act, and for such other

3 relief as the Court may deem just and proper;

4      b.     On Count 2, for judgment against Defendants for statutory penalties

5 and treble damages, as provided for under the False Claims Act, and for such other

6 relief as the Court may deem just and proper;

7      c.     On Count 3, for judgment against defendants in the amount they have

8 been unjustly enriched with;

9      d.     That Relator be awarded all costs of this action, including attorneys'

10 fees and costs pursuant to 31 U.S.C. §3730(d);

11      e.     That Defendants be enjoined from concealing, removing,

12 encumbering or disposing of assets that may be required to pay the civil monetary

13 penalties imposed by the Court; and

14      f.     That the United States and the Relator be awarded such other relief as

15 the Court may deem just and proper.

16                        Respectfully Submitted,

17

18                        Robert W. Snyder

Laura A. Moya

19                        LAW OFFICES OF ROBERT W. SNYDER

6 Morgan, Suite 114

20                        Irvine, CA 92618

21                        Telephone: (949) 453-8688

22                        E-mail(s):   rsnyder@rwsnyderlaw.com

lmoya@rwsnyderlaw.com

23

24                        *Attorneys for Relator,*

25                        URBAN GLOBAL, LLC

               DATED: August 7, 2020

26                Irvine, CA

27

28

**DEMAND FOR JURY TRIAL**

Relator, on behalf of itself, the State of California, and the United States, demands a jury trial on all claims alleged herein.  Plaintiff demands trial by jury in this matter.

Respectfully Submitted,

_(signature)_

Robert W. Snyder
Laura A. Moya
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail(s):    rsnyder@rwsnyderlaw.com
              lmoya@rwsnyderlaw.com

*Attorneys for Relator,*
URBAN GLOBAL, LLC

DATED: August 7, 2020
        Irvine, CA

COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT (31 U.S.C. §§ 3729, *et. seq.*)

Align top of FedEx Express® shipping label here.
RECEIVED
CLERK, U.S. DISTRICT COURT
AUG 10 2020
CENTRAL DISTRICT OF CALIFORNIA
BY DEPUTY
TO CLERK OF THE COURT
U.S. DISTRICT COURT - WESTERN DIV.
255 E. TEMPLE STREET, SUITE TS-134
LOS ANGELES CA 90012
(213) 894-3535
CV
BILL SENDER
FedEx Express
E
MON - 10 AUG 10:30A
PRIORITY OVERNIGHT
TRK# 0201 7712 1068 1855
ASR
90012
92 EMTA
CA-US LAX
FedEx Ship Manager - Print Your Label(s)
8/7/2020
Medium
Express
RT787
1 10:30
A
1855 08.10